UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 09-01278 ODW |
| Plaintiff, | ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | ) ) | |
| MICHAEL PLANK, | ) ) | |
| Defendant. | ) ) | |

## I.
## INTRODUCTION

On June 21, 2010 Defendant brought on for hearing his motion to suppress evidence and to compel the government to disclose the identity of a confidential informant. After hearing argument of counsel and testimony of the case agent, the motions were and are denied. The court indicates however, that it would reconsider the issue of the identity of the confidential informant on a showing that this information might prove helpful to defendant's case.

## II.
## FINDINGS OF FACT

1.  On November 15, 2009 representatives of the U. S. Fish and Wildlife Service ("USFWS") received a call from a confidential informant ("CI") indicating that defendant, who

owned the company Big Game Reptiles, would be smuggling lizards into the United States aboard a flight from Australia to Los Angeles International Airport on November 17, 2009.

2. On November 16, 2009 Special Agent Mona Ionelli of Fish and Wildlife, searched the agency's database and found that defendant was the owner of Big Game Reptiles. That search also revealed that Big Game Reptiles had a total of 141 declaration records of both imports and exports with the USFWS. There was no current or pending declaration for importing wildlife into the United States from Australia.

3. An internet search by the case agent revealed a website for Big Game Reptile which featured a large banner with various species of geckos moving across the screen. The welcome page stated,

> Big Game Reptiles is a world leader in the breeding of Australian geckos with the genus Nephrurus, commonly called knob-tailed geckos. Our collection consists of the most diverse bloodlines available which ensures our customers receive healthy, well represented animals . . . .

4. The Case Agent also reviewed defendant's passenger activity records in the Treasury Enforcement Communications System and noted that defendant had made at least eight trips to Australia in the past six years.

5. The same day, the Case Agent with another special agent of the USFWS met with U. S. Customs and Border Protection ("CBP") officers regarding the reported smuggling of lizards into the United States. CBP Officer Steve Hawrylack advised the USFWS agents that defendant had traveled to Australia on November 7, 2009 and was traveling with a companion. He further advised that defendant and his companion were scheduled to return to Los Angeles on November 17, 2009 on board United Airlines flight 840 from Sydney, Australia.

6. On the evening of November 16, 2009 CBP Officer Hawrylack advised the USFWS agents that defendant had indeed boarded the United flight and was enroute to Los Angeles, but the companion had not boarded the flight.

7. On November 17, 2009 USFWS agents were present at terminal 7 at LAX awaiting defendant's arrival. USFWS Special Agent Paul Montouri observed defendant deplane from flight 840 wearing a black shirt, shorts, ball cap and carrying a backpack. Special Agent Montouri followed defendant to the U. S. Immigration check point and observed defendant pass through U. S. Immigration. Defendant was then followed toward baggage claim. Enroute to baggage claim, defendant stepped into the men's room, still being followed by the special agent. Defendant was observed entering a stall, but his feet were seen facing away from the toilet. It appeared to the special agent that defendant was doing something other than using the toilet. After a time, the special agent followed defendant out of the restroom.

8. Defendant proceeded to the customs area. While defendant's carry-on baggage was being checked, a CBP officer asked defendant if he was bringing any wildlife into the country, to which defendant replied "No." At this time, defendant was talkative and casual.

9. When the CBP officer informed defendant that he would be subjected to a pat-down search, the case agent noted defendant's demeanor changed from friendly to nervous. During the pat-down, the CBP officer found two money belts on defendant containing a total of 15 live lizards, consisting of 11 skinks, two geckos and two monitor lizards.

III.

### CONCLUSIONS OF LAW

1. The government may conduct border searches without a warrant or probable cause. All that is required of the officer is that he proceed in a reasonable manner. "Thus, while every person crossing the border may be required to disclose the contents of his or her baggage based on nothing more than the fat that he has crossed the border, more intrusive searches must be supported by some level or suspicion." *United States v. Des Jardins*, 747 F. 2d 499, 504-505 (9th Cir. 1984)

Where, as here, the search is a pat-down something more in terms of justification is required. In United States v. Couch, 688 F. 2d 599 the court stated:

Page 3

>The type and level of suspicion demanded by the reasonableness requirement is "incapable of comprehensive definition . . . [I]n each case the need for the particular search is balanced against the invasion that the search entails." (Citations omitted). Nevertheless, our prior decisions provide us with some general guidelines which facilitate our review. Under these decisions, a simple pat-down search is "permissible with only a minimal showing of suspicion." Id at 604.

2.  Given the nominal burden of "minimum suspicion," and the evidence possessed by the government prior to the pat-down search of defendant at LAX, defendant has not provided a sufficient basis in fact or law to suppress the evidence obtained from that minimally intrusive search.

3.  The evidence obtained by the government, including the tip obtained from the confidential informant, the evidence corroborating the tip, such as defendant's scheduled flight to Los Angeles from Australia, the defendant's association with the business Big Game Reptiles, his prior flights to Australia, his declarations with the USFWS showing imports and exports of wildlife, his activity in the stall of the men's room indicating a need for privacy for reasons of other than to use the facilities, the change in his demeanor when advised that he was going to have to submit to a pat-down search, all combined to provide that minimal suspicion or even reasonable suspicion to warrant the minimally intrusive search.

4.  Defendant challenges whether the CBP officer who conducted the pat-down was armed with the information provided by the confidential informant. Under the "collective knowledge" doctrine that is not necessary.

>Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment. *United States v. Ramirez*, 473 F.3d 1026, 1037.

Page 4

5.      Defendant argues that the ROI fails to provide "verified consistent reliability" of the confidential informant, citing *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584 (1969). The viability of this case and the test posited therein has been jettisoned in favor of the "totality of the circumstances" test announced in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct 2317. Under the totality of the circumstances cited above the government was justified in giving credence to the information provided by the informant. Thus, the court finds as a matter of law that the pat-down search was justified and suppression of the evidence discovered by that search is not warranted.

6.      Regarding Defendant's request for an order requiring the government to provide the identity of the confidential informant, the government makes two arguments: (1) the government has a limited privilege to withhold an informant's identity so as to provide protection to both the informant and the public interest in the flow of information, and (2) because the government has no intention of calling the informant or to admit into evidence the tip provided by the informant and the defendant has offered no theory as to how the identity of the informant would be relevant or helpful to the defense. In the absence of any present showing by Defendant of the need for disclosure of the confidential informant's identity, there is no basis for ordering disclosure at this time. See *United States v. Jaramillo-Suarez,* 950 F. 2d 1378, 1386 (9th Cir. 1991)(the court found that defendant failed to meet the burden imposed by *United States v. Roviaro, 353 U.S. 53,* to obtain either a hearing or disclosure of the identity of the informant." However, the court will re-hear Defendant's motion in the event Defendant can present new evidence which would entitle Defendant to again seek disclosure of the informant's identity.

For all the foregoing reasons, Defendant's motion to suppress evidence and to compel disclosure of the confidential informant's identity is DENIED.

IT IS SO FOUND AND ORDERED.

Dated:   December 8, 2010

_____
OTIS D. WRIGHT,
United States District Judge

Page 5